UNITED STATES BANKRUPTCY COURT

Northern District of California

| | |
|---|---|
| In re: Markella Raine | Bankruptcy No.: 16-41221 |
| | R.S. No.: DJD-001 |
| | Hearing Date: 01/18/2017 |
| Debtor(s) | Time: 9:30 am |

## Relief From Stay Cover Sheet

Instructions: Complete caption and Section A for all motions.  Complete Section B for mobile homes, motor vehicles, and personal property. Complete Section C for real property.  Utilize Section C as necessary.  If moving party is not a secured creditor, briefly summarize the nature of the motion in Section D.

(A)   Date Petition Filed:  05/03/2016                     Chapter:  13

Prior hearings on this obligation: _____   Last Day to File §523/§727 Complaints:   08/08/2016

(B)   Description of personal property collateral (e.g. 1983 Ford Taurus):

Secured Creditor  [   ] or lessor [   ]

| | | | |
|---|---|---|---|
| Fair market value: | $_____ | Source of value: _____ | |
| Contract Balance: | $_____ | Pre-Petition Default: | $_____ |
| Monthly Payment: | $_____ | No. of months: | _____ |
| Insurance Advance: | $_____ | Post-Petition Default: | $_____ |
| | | No. of months: | _____ |

(C)   Description of real property collateral (e.g. Single family residence, Oakland, CA):  437 Rincon Road, El Sobrante, CA  94803

Fair market value: $  650,000.00          Source of value:  Schedules          If appraisal, date: _____

Moving Party's position (first trust deed, second, abstract, etc.):  1st DOT

| | | | |
|---|---|---|---|
| Approx. Bal. | $ 258,575.92 | Pre-Petition Default: | $_____ |
| As of (date): 10/03/2016 | | No. of months: | _____ |
| Mo. payment: | $ 1,953.49 | Post-Petition Default: | $ 14,635.43 |
| Notice of Default (date): _____ | | No. of months: | 7 |
| Notice of Trustee's Sale: _____ | | Advances Senior Liens: | $_____ |

Specify name and status of other liens and encumbrances, if known (e.g. trust deeds, tax liens, etc.):

| Position | Amount | Mo. Payment | Defaults |
|---|---|---|---|
| 1st Trust Deed: Movant | $ 258,575.92 | $ 1,953.49 | $ 14,635.43 |
| 2nd Trust Deed: _____ | $_____ | $_____ | $_____ |
| _____ : | | | |
| _____ : | | | |
| _____ : | | | |
| (Total) | $ 258,575.92 | $ 1,953.49 | $ 14,635.43 |

(D)   Other pertinent information:

/s/Darren J. Devlin
_____
Signature
Darren J. Devlin, Esq.
_____
Print or Type Name

Dated:  December 11, 2016

Attorney for   Seterus, Inc., as the authorized subservicer for Federal National Mortgage Association ("Fannie Mae"), Creditor, c/o Seterus, Inc.

Darren J. Devlin, Esq. SBN [176261]
THE MORTGAGE LAW FIRM, PLC
41689 Enterprise Circle North, Suite 228
Temecula, CA 92590
Telephone: 760-512-1757
Facsimile: 760-230-5876
darren.devlin@mtglawfirm.com
Attorney for Secured Creditor/Moving Party
SETERUS, INC., AS THE AUTHORIZED
SUBSERVICER FOR FEDERAL NATIONAL
MORTGAGE ASSOCIATION ('FANNIE MAE'),
CREDITOR C/O SETERUS, INC.

## UNITED STATES BANKRUPTCY COURT

### NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>MARKELLA RAINE,<br><br>      Debtor.<br><br>_____<br><br>SETERUS, INC., AS THE AUTHORIZED SUBSERVICER FOR FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), CREDITOR, C/O SETERUS, INC.,<br><br>      Movant,<br><br>-vs-<br><br>MARKELLA RAINE, Debtor; Martha G. Bronitsky, Chapter 13 Trustee,<br><br>      Respondents. | Case No: 16-41221<br><br>Chapter 13<br><br>DC No.: DJD-001<br><br>**MOTION FOR RELIEF FROM AUTOMATIC STAY**<br><br>Date: January 18, 2017<br>Time: 9:30 a.m.<br>Ctrm: 220<br><br>*The courtroom of the Honorable William J. Lafferty* |

Secured creditor and moving party Seterus, Inc., as the authorized subservicer for Federal

National Mortgage Association, ("Fannie Mae"), c/o Seterus, Inc. ("Creditor"), respectfully

submits its Motion for Relief from Automatic Stay to enforce its lien upon the real property of

1

Debtor Markella Raine ("Debtor").

1. On May 3, 2016, Debtor filed a voluntary Chapter 13 petition.

2. Martha G. Bronitsky is the duly qualified and acting Chapter 13 Trustee.

3. On or about April 17, 2012, Debtor executed and delivered to J.P. Morgan Chase Bank, N.A. ("Chase"), a written Note ("Note"), for value received. Pursuant to the terms of the Note, Debtor promised to pay the principal sum of $276,284.00 at the interest rate of 4.875% commencing on or about June 1, 2012, and continuing until May 1, 2042. The current monthly payment is $1,953.49 of which $491.37 is for the impound.

4. To secure repayment of the Note, on or about April 17, 2012, Debtor granted to Chase beneficial interest under a first priority Deed of Trust ("Deed of Trust"). The Deed of Trust encumbers residential real property located at 437 Rincon Road, El Sobrante, CA 94803 ("Property"). The Deed of Trust was recorded in the Official Records of Contra Costa County, California. Beneficial interest under the Note and Deed of Trust has been duly assigned to Creditor ("Assignment").

5. On March 1, 2016, Debtor defaulted under the terms of the Note by failing to make the monthly payment due on that date. Debtor has failed to make all consecutive monthly payments on the Note due thereafter to Creditor. Post-petition arrears now exist in the amount of $20,560.89 representing ten (10) payments and attorneys' fees. An additional payment is due on January 1, 2017, in the amount of $1,943.49. Post-petition arrears are as follows:

| | |
|---|---|
| 3/1/16 – 12/1/16 payments | $19,534.90 |
| Attorneys' fees and costs for Motion for Relief | $ 1,026.00 |
| Less suspense | ($ 0.01) |
| Total Arrearages | $20,560.89 |

6. The last payment was received from Debtor on November 22, 2016, representing the February, 2016, mortgage payment.

7. The principal amount due and owing to Creditor on the Note as of October 3, 2016, is $258,575.92.

WHEREFORE, Creditor prays that the automatic stay be modified as follows:

A. For an Order granting Creditor immediate relief from the automatic stay to take any and all actions, including, but not limited to, foreclosure and sale, to enforce its lien on the real property located at 437 Rincon Road, El Sobrante, CA 94803;

B. That the requirements of Bankruptcy Rule 4001(a)(3), be waived; and

C. That Creditor have such other and further relief as the Court may deem just and proper.

Dated: December 11, 2016                    Respectfully submitted,


                                            /s/Darren J. Devlin_____
                                            Darren J. Devlin, Esq.
                                            Attorney for SETERUS, INC., AS THE
                                            AUTHORIZED SUBSERVICER FOR
                                            FEDERAL NATIONAL MORTGAGE
                                            ASSOCIATION ('FANNIE MAE'),
                                            CREDITOR, C/O SETERUS, INC.

3

Darren J. Devlin, Esq. SBN [176261]
THE MORTGAGE LAW FIRM, PLC
41689 Enterprise Circle North, Suite 228
Temecula, CA 92590
Telephone: 760-512-1757
Facsimile: 760-230-5876
darren.devlin@mtglawfirm.com
Attorney for Secured Creditor/Moving Party
SETERUS, INC., AS THE AUTHORIZED
SUBSERVICER FOR FEDERAL NATIONAL
MORTGAGE ASSOCIATION ('FANNIE MAE'),
CREDITOR C/O SETERUS, INC.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>MARKELLA RAINE,<br><br>　　　　Debtor.<br>_____<br><br>SETERUS, INC., AS THE AUTHORIZED SUBSERVICER FOR FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), CREDITOR, C/O SETERUS, INC.,<br><br>　　　　Movant,<br><br>-vs-<br><br>MARKELLA RAINE, Debtor; Martha G. Bronitsky, Chapter 13 Trustee,<br><br>　　　　Respondents. | Case No: 16-41221<br><br>Chapter 13<br><br>DC No.: DJD-001<br><br>**DECLARATION IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY**<br><br>Date: January 18, 2017<br>Time: 9:30 a.m.<br>Ctrm: 220<br><br>*The courtroom of the Honorable William J. Lafferty* |

I, Riki Lachica, declare as follows:

　　1.　　I am employed as a Document Specialist by Seterus, Inc., as the authorized subservicer for Federal National Mortgage Association, ("Fannie Mae"), Creditor, c/o Seterus, Inc. ("Creditor"). In that capacity, I bear primary responsibility for protecting Creditor's

1

ownership interest in the subject property during any bankruptcy proceedings which involve the property and subject loan account of Debtor Markella Raine ("Debtor").

2. I have custody and control of Creditor's business records and documents relating to its loan to Debtor. These records were prepared in the regular course of Creditor's business at or near the time of the act, condition, or event to which they relate. Such records were prepared in the ordinary course of business by Creditor by a person employed by Creditor who has personal knowledge of the event being recorded and who has a business duty to Creditor to make a record of such event.

3. On May 3, 2016, Debtor filed a voluntary Chapter 13 petition.

4. Martha G. Bronitsky is the duly qualified and acting Chapter 13 Trustee.

5. On or about April 17, 2012, Debtor executed and delivered to J.P. Morgan Chase Bank, N.A. ("Chase"), a written Note ("Note"), for value received. Pursuant to the terms of the Note, Debtor promised to pay the principal sum of $276,284.00 at the interest rate of 4.875% commencing on or about June 1, 2012, and continuing until May 1, 2042. A true and correct copy of the Note is attached hereto as Exhibit "A" and is incorporated herein by this reference. The current monthly payment is $1,953.49 of which $491.37 is for the impound.

6. To secure repayment of the Note, on or about April 17, 2012, Debtor granted to Chase beneficial interest under a first priority Deed of Trust ("Deed of Trust"). The Deed of Trust encumbers residential real property located at 437 Rincon Road, El Sobrante, CA 94803 ("Property"). The Deed of Trust was recorded in the Official Records of Contra Costa County, California. A true and correct copy of the Deed of Trust is attached hereto as Exhibit "B" and is incorporated herein by this reference. Beneficial interest under the Note and Deed of Trust has been duly assigned to Creditor ("Assignment"). A true and correct copy of the Assignment is attached hereto as Exhibit "C" and incorporated herein by reference.

7. On March 1, 2016, Debtor defaulted under the terms of the Note by failing to make the monthly payment due on that date. Debtor has failed to make all consecutive monthly payments on the Note due thereafter to Creditor. Post-petition arrears now exist in the amount of $20,560.89 representing ten (10) payments and attorneys' fees. An additional payment is due on January 1, 2017, in the amount of $1,943.49. Post-petition arrears are as follows:

2

| | |
|---|---|
| 3/1/16 – 12/1/16 payments | $19,534.90 |
| Attorneys' fees and costs for Motion for Relief | $ 1,026.00 |
| Less suspense | ($ 0.01) |
| Total Arrearages | $20,560.89 |

8.    The last payment was received from Debtor on 11|22|16 ,

representing the February, 2016, mortgage payment.

9.    The principal amount due and owing to Creditor on the Note as of October 3, 2016, is $258,575.92.

I have personal knowledge of the foregoing facts and if called upon as a witness I could and would competently testify thereto.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and as to those matters testified to on information and belief, I believe them to be true.

Executed this 10 day of Dec , 2016, at Beaverton, Oregon.

_(signature)_ 12/6/16

Seterus, Inc. as authorized sub-servicer
for Federal National Mortgage
Association ("Fannie Mae"), a
corporation organized and existing under
the laws of the United States of America

Darren J. Devlin, Esq. SBN [176261]
THE MORTGAGE LAW FIRM, PLC
41689 Enterprise Circle North, Suite 228
Temecula, CA 92590
Telephone: 760-512-1757
Facsimile: 760-230-5876
darren.devlin@mtglawfirm.com
Attorney for Secured Creditor/Moving Party
SETERUS, INC., AS THE AUTHORIZED
SUBSERVICER FOR FEDERAL NATIONAL
MORTGAGE ASSOCIATION ('FANNIE MAE'),
CREDITOR C/O SETERUS, INC.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>MARKELLA RAINE,<br><br>       Debtor.<br><br>_____<br><br>SETERUS, INC., AS THE AUTHORIZED SUBSERVICER FOR FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), CREDITOR, C/O SETERUS, INC.,<br><br>       Movant,<br><br>-vs-<br><br>MARKELLA RAINE, Debtor; Martha G. Bronitsky, Chapter 13 Trustee,<br><br>       Respondents. | Case No: 16-41221<br><br>Chapter 13<br><br>DC No.: DJD-001<br><br>**EXHIBITS 1-3 IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY**<br><br>Date: January 18, 2017<br>Time: 9:30 a.m.<br>Ctrm: 220<br><br>*The courtroom of the Honorable William J. Lafferty* |

Exhibit No. 1—Note, pgs 2-4;

Exhibit No. 2—Deed of Trust, pgs 5-23; and

Exhibit No. 3—Assignment, pgs 24-25.

1

# Note



| April 17, 2012 | EL SOBRANTE | CA |
|---|---|---|
| [Date] | [City] | [State] |

437 RINCON RD, EL SOBRANTE, CA 94803
[Property Address]

**1. Borrower's Promise to Pay.** In return for a loan that I have received, I promise to pay U.S. $276,284.00 (this amount is called *"Principal"*), plus interest, to the order of the Lender. The Lender is JPMorgan Chase Bank, N.A.. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the *"Note Holder"*.

**2. Interest.** Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 4.875%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. Payments.**

**(A) Time and Place of Payments.** I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on June 1, 2012. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on May 1, 2042, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the *"Maturity Date"*.

I will make my monthly payments at P.O. Box 78420, Phoenix, AZ 85062-8420 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments.** My monthly payment will be in the amount of U.S. $1,462.12.

**4. Borrower's Right to Prepay.**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a *"Prepayment"*. When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. Loan Charges.** If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. Borrower's Failure to Pay as Required.**

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Initials: _____

Form 3200 (1/01)
Page 1 of 3

**(A) Late Charge for Overdue Payments.** If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default.** If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder.** Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. Giving of Notices.** Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. Obligations of Persons Under This Note.** If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. Waivers.** I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. *"Presentment"* means the right to require the Note Holder to demand payment of amounts due. *"Notice of Dishonor"* means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. Uniform Secured Note.** This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the *"Security Instrument"*), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP6
Wolters Kluwer Financial Services

Form 3200 1/01/11
Page 2 of 3

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Borrower

_____    4-18-12        _____    4-18-12
MARK RAINE                          Date           MARKELLA RAINE                     Date
                                    Seal                                              Seal

Pay to the Order of:
Without Recourse
JPMorgan Chase Bank, N.A.

By: _____
Christopher Emanuel / Assistant Secretary

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac Uniform Instrument
VMP®
Wolters Kluwer Financial Services

Page 3 of 3



**Recording requested by:**
**Old Republic Title**

Recording Requested By: Magdalena
Enriquez

Return To: JPMorgan Chase Bank, N.A.
Collateral Trailing Documents
P.O. Box 8000 - Monroe, LA 71203

Prepared By: Magdalena Enriquez
410 S Mathilda Ave
2nd Floor
Sunnyvale, CA 94086



CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
**DOC- 2012-0091141-00**
Acct 11-Old Republic Title
Friday, APR 20, 2012 08:00:00
MOD    $22.00:REC    $32.00:FTC    $21.00
DAF    $2.70:REF    $0.30:RED    $1.00
ERD    $1.00:
Ttl Pd    $80.00    Rcpt # 0001244342

---

# Deed of Trust

---

**Definitions.** Words used in multiple sections of this document are defined below and other words are
defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this
document are also provided in Section 16.

(A) *"Security Instrument"* means this document, which is dated April 17, 2012, together with all
Riders to this document.

(B) *"Borrower"* is Mark Raine and Markella Raine, husband and wife, as Joint Tenants. Borrower's
address is 4804 MORWOOD DR, RICHMOND, CA 94803. Borrower is the trustor under this Security
Instrument.

(C) *"Lender"* is JPMorgan Chase Bank, N.A.. Lender is a National Banking Association organized
and existing under the laws of the United States. Lender's address is 1111 Polaris Parkway, Columbus,
OH 43240 . Lender is the beneficiary under this Security Instrument.

(D) *"Trustee"* is JPMorgan Chase Bank, N.A..

(E) *"Note"* means the promissory note signed by Borrower and dated April 17, 2012. The Note states
that Borrower owes Lender two hundred seventy six thousand two hundred eighty-four and 00/100
Dollars (U.S. $276,284.00) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than May 1, 2042.

(F) *"Property"* means the property that is described below under the heading "Transfer of Rights in
the Property."

(G) *"Loan"* means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®
Wolters Kluwer Financial Services

03/10

Page 1 of 17

**(H)** *"Riders"* means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I)** *"Applicable Law"* means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** *"Community Association Dues, Fees, and Assessments"* means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** *"Electronic Funds Transfer"* means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** *"Escrow Items"* means those items that are described in Section 3.

**(M)** *"Miscellaneous Proceeds"* means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** *"Mortgage Insurance"* means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** *"Periodic Payment"* means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** *"RESPA"* means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, RESPA refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** *"Successor in Interest of Borrower"* means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**Transfer of Rights in the Property.** This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of

Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY [Type of Recording Jurisdiction] of Contra Costa [Name of Recording Jurisdiction] See Attached Legal Description See Attached

Parcel ID Number: 426-243-004/426-243-005 which currently has the address of 437 RINCON RD [Street] EL SOBRANTE [City], California 94803 [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**Uniform Covenants**. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making



payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.



CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
08/10
Initials: MR MV
Page 4 of 17

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®
Wolters Kluwer Financial Services

Initials *MRW*    Page 5 of 17

03/10

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
03/10
Page 6 of 17



Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations



include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
00/10

Initials: _____ Page 8 of 17



required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(A) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(B) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
00/10

Initials: _____ Page 8 of 17

Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of

Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers



unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained



CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 001
09/10
VMP®
Wolters Kluwer Financial Services
Page 12 of 17

in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides



CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3005 1/01
09/10

VMP®
Wolters Kluwer Financial Services

Page 13 of 17

and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**Non-Uniform Covenants**. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.



CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
03/10
Page 14 of 17

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3005 1/01
09/10

VMP®
Wolters Kluwer Financial Services

Initials _ML MM_   Page 15 of 17

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**Borrower**

_____     4-18-12
**MARK RAINE**                 Date
                                     Seal

_____     4-18-12
**MARKELLA RAINE**             Date
                                     Seal



CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT             Form 3005 1/01
                                                              09/10
VMP®
Wolters Kluwer Financial Services                           Initials:    Page 16 of 17

Acknowledgment

State of California

County of Contra Costa

On ___APRIL 18, 2012___, before me, ___KEVIN DANIEL GUARNEROS___, Notary
Public, personally appeared

MARK RAINE, MARKELLA RAINE

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

KEVIN DANIEL GUARNEROS
COMM. # 1964295
NOTARY PUBLIC · CALIFORNIA
SAN MATEO COUNTY
COMM. EXPIRES DEC. 19, 2015

Notary Public
My commission expires:

12/19/15

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
09/10

Initials: ___MS RM___   Page 17 of 17

# EXHIBIT A

The land referred to is situated in the unincorporated area of the County of Contra Costa, State of California, and is described as follows:

Parcel One:

Portion of Lots 247 1/2 and 248, as designated on the Map of San Pablo Rancho filed March 1, 1894, in the Office of the County Recorder for the County of Contra Costa, more particularly described as follows:

Beginning in the center line of the County road known as Renfrew Court at the East line of the parcel of land described in the deed from El Sobrante Land Company to Robert E. Minkley, et al., recorded January 18, 1944 in Book 762 of Official Records, at Page 341; thence from said point of beginning South 04 degrees 59' East along said East line, 165.69 feet to the North line of the parcel of land described in the deed from Carl Ulrich to Forrest Earl Moore, et ux, recorded September 24, 1946 (File No. 35565); thence South 89 degrees 21' East, along said North line 355.66 feet to the Northwest line of the parcel of land described in the deed from M.W. Rews, et ux, to Fred S. Layman, et ux, recorded December 22, 1945, in Book 854 of Official Records, at Page 431; thence North 37 degrees East along said Northwest line 121.2 feet to the West line of the parcel of land described in the deed from El Sobrante Land Company, to Clarence G. Smith, recorded December 31, 1942, in Book 715 of Official Records, at Page 33; thence North 18 degrees 07' West, along said West line, 101.81 feet to the West line of the parcel of land described in the deed from El Sobrante Land Company to D.F. Simpson, et ux, recorded September 30, 1939, in Book 518 of Official Records, at Page 265; thence along said West line North 15 degrees 50' 25" East 25 feet and North 30 degrees 24' 20" West 158 feet to the most Southerly corner of the parcel of land described in the deed from El Sobrante Land Company to James W. Whitten, et ux, recorded, March 16, 1939 in Book 492 of Official Records, at Page 242; thence North 39 degrees 42' 20" West along the West line of said Whiten parcel 173.77 feet to the most Easterly corner of the parcel of land described in the deed from El Sobrante Land Company to Earl L. Kirk, et ux, recorded September 2, 1944 in Book 794 of Official Records at Page 345; thence along the exterior boundary of said Kirk parcel as follows: South 30 degrees 25' 50" West 330.77 feet; South 32 degrees 11' 34" West 40 feet; South 24 degrees 04' 50" West 15 feet and North 65 degrees 55' 10" West 35.19 feet to the point of beginning.

Excepting therefrom the following:

1) The interest conveyed to Contra Costa County by Deed from El Sobrante Land Company, et al., recorded December 2, 1942 in Book 707 of Official Records at Page 174, over those portions of the premises lying within Renfrew Court as described in said deed and

2) Those portion of parcel one hereinabove conveyed to Robert H. Wetter, Jr. and Beulah E. Wetter in the deed from Ernest Rockeman and Evelyn Rockeman recorded on May 4, 1956, in Book 2760 of Official Records, at Page 1 (SeriesNo. 27680).

Parcel Two:

Case: 16-41221    Doc# 28    Filed: 12/11/16    Entered: 12/11/16 12:54:34    Page 29 of 34

A non-exclusive easement as an appurtenance to parcel one above for use as a roadway for vehicles of all kinds, pedestrians and animals, and for use as a right of way for water, gas, oil and sewer pipe lines, and for telephone, electric light and power lines, together with the necessary poles or underground conduits to carry said lines over and under the Northern 25 feet of the property described in the deed recorded May 4, 1956, in Book 2760 of Official Records, at Page 1 (Series No. 27680).

Parcel Three:

A non-exclusive easement as an appurtenance to Parcel one above for roadway purposes, over the following described:

Portion Lots 247 1/2 and 248, Map of San Pablo Rancho, described as follows:

Beginning at a point in the West line of the parcel of land described in the deed to Clarence G. Smith, recorded December 31, 1941, Book 715 Official Records, Page 33, which point is also in the Northwesterly line of the parcel of land described in the deed to Fred S. Laymon, et ux, recorded December 22, 1945, Book 854 Official Records, Page 431; thence from said point of beginning South 37 degrees West, 50.91 feet; thence due East to a point in a line which is parallel with and distant Southwesterly 50 feet (measured at right angles) from the Northeasterly line of said Laymon Parcel (854 OR 431); thence Southeasterly along said parallel line to a point which bears South 33 degrees 26' 40" East, 50 feet and South 57 degrees 28' 50" West from the Southerly terminus of that certain curve in the Northerly line of Rincon Road which has a radius of 70 feet; thence North 57 degrees 28' 50" East to the Westerly line of said Rincon Road; thence North 33 degrees 26' 40" West, 50 feet along the line of said Rincon Road to the beginning of the above mentioned curve; thence Northerly along the arc of said curve to its Northeasterly terminus; thence South 57 degrees 28' 50" West to the Southwesterly line of the land described in the deed to Calvin H. Reasoner, et ux, recorded in Book 635 Official Records, Page 426, said line being also the Northeasterly line of said Laymon Parcel (854 OR 431); thence Northerly along the Northeasterly line of said Laymon parcel (854 OR 431) to the most Northerly corner of said Laymon Parcel (854 OR 431); thence North 37 degrees West along the Northwesterly line of said Laymon Parcel (854 OR 431) to the point of beginning.

APN: 426-243-004/426-243-005

20159026459000004
CONTRA COSTA Co Recorder Office
JOSEPH CANCIAMILLA, Clerk-Recorder
DOC 2015-0264590-00
Acct 1529-Peirson Patterson LLP
Thursday, DEC 24, 2015 12:00:02
MOD    $4.00|REC   $14.00|FTC    $3.00
DAF    $2.70|REF    $0.30|RED    $1.00
ERD    $1.00|
Ttl Pd    $26.00         Nbr-0002473587
JEB/RC/1-4

Recording Requested By:
PeirsonPatterson, LLP
And When Recorded Mail To:
PEIRSONPATTERSON, LLP
ATTN: RECORDING DEPT.
13750 OMEGA ROAD
DALLAS, TX 75244-4505

Parcel ID Number: 426-243-004/426-243-005

―――――――――――――――[Space Above This Line For Recording Data]―――――――

Loan No.: ▮▮▮▮▮

# CALIFORNIA ASSIGNMENT OF DEED OF TRUST

For Value Received, **JPMorgan Chase Bank, National Association**, the undersigned holder of a Deed of Trust (herein "Assignor") does hereby grant, sell, assign, transfer and convey, unto **FEDERAL NATIONAL MORTGAGE ASSOCIATION, ITS SUCCESSORS OR ASSIGNS**, (herein "Assignee"), whose address is **14221 Dallas Parkway, Suite 1000, Dallas, TX 75254**, all beneficial interest under a certain Deed of Trust dated **April 17, 2012** and recorded on **April 20, 2012**, made and executed by **MARK RAINE AND MARKELLA RAINE**, to **JPMORGAN CHASE BANK, N.A.**, Trustee, upon the following described property situated in **CONTRA COSTA** County, State of California:
Property Address: **437 RINCON RD, EL SOBRANTE, CA 94803**

**See exhibit "A" attached hereto and made a part hereof.**

such Deed of Trust having been given to secure payment of **Two Hundred Seventy Six Thousand Two Hundred Eighty Four and 00/100ths ($276,284.00)**, which Deed of Trust is of record in Book, Volume, or Liber No. **N/A**, at Page **N/A** (or as No. **2012-0091141-00**), in the Office of County Recorder of **CONTRA COSTA** County, State of California.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Deed of Trust on
7 | 10 | 15



Assignor:
JPMorgan Chase Bank, National Association

By: _____
Anedra Johnson

Its: _____ **VICE PRESIDENT**

California Assignment of Deed of Trust
JPMorgan Chase Bank N.A. Project W3128                    Page 1 of 2                    L73108CA 01/12 Rev. 02/14




## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of **Louisiana** §

Parish of **Ouachita** §
§

On this day, 7|10|15, before me _Y. K. Wilson Notary Public_ appeared _Anedra Johnson_, to me personally known, who, being by me duly sworn did say that he/she is the **VICE PRESIDENT**, of **JPMorgan Chase Bank, National Association**, and that the seal affixed to said instrument is the seal of said entity and that the instrument was signed in behalf of the said entity, by authority of its Board of Directors or Trustees and that _Anedra Johnson_ acknowledged the instrument to be the free act and deed of the said entity.

Y. K. Wilson
Notary Public #064399
Ouachita Parish, LA
Lifetime Commission

_____
Notary Public
_Y. K. Wilson_
_____
Printed Name

(Seal)

My Commission Expires: _Lifetime_




1
2
3
4
5
6
7

Darren J. Devlin, Esq. SBN [176261]
THE MORTGAGE LAW FIRM, PLC
41689 Enterprise Circle North, Suite 228
Temecula, CA 92590
Telephone: 760-512-1757
Facsimile: 760-230-5876
darren.devlin@mtglawfirm.com
Attorney for Secured Creditor/Moving Party
SETERUS, INC., AS THE AUTHORIZED
SUBSERVICER FOR FEDERAL NATIONAL
MORTGAGE ASSOCIATION ('FANNIE MAE'),
CREDITOR C/O SETERUS, INC.

8

UNITED STATES BANKRUPTCY COURT

9

NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

In re:

MARKELLA RAINE,

        Debtor.

_____

SETERUS, INC., AS THE AUTHORIZED
SUBSERVICER FOR FEDERAL
NATIONAL MORTGAGE
ASSOCIATION ("FANNIE MAE"),
CREDITOR, C/O SETERUS, INC.,

        Movant,

-vs-

MARKELLA RAINE, Debtor; Martha G.
Bronitsky, Chapter 13 Trustee,

        Respondents.

Case No: 16-41221

Chapter 13

DC No.: DJD-001

**PROOF OF SERVICE**

Date: January 18, 2017
Time: 9:30 a.m.
Ctrm: 220

*The courtroom of the Honorable William J. Lafferty*

25
26
27
28

    I, Darren J. Devlin, declare: I am employed in the county of Riverside, California. My business address is 41689 Enterprise Circle North, Suite 228, Temecula, CA 92590. I am over the age of eighteen and not a party to this action.

1


On December 12, 2016, I served the Motion for Relief from Automatic Stay with supporting documents in said cause by placing a true and correct copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States Mail at Encinitas, California, addressed as follows: The U.S. Trustee will be served by the Court via Notice of Electronic Filing ("NEF"), email, with corresponding hyperlink(s) to the documents via the PACER system. The transmission of the NEF shall constitute effective service in accordance with BLR 9013-3(c) and 9022-1(b). The U.S. Trustee is a registered participant in the Court's electronic filing system and has consented to electronic service.

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration was executed on December 11, 2016, at Encinitas, California.

/s/Darren J. Devlin

Markella Raine
437 Rincon Road
El Sobrante, CA 94803

Patrick L. Forte
1624 Franklin St. #911
Oakland, CA 94612

Martha G. Bronitsky
P.O. Box 5044
Hayward, CA 94540

Honorable William J. Lafferty
P.O. Box 2070
Oakland, CA 94604

2